## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| LAUREN MACARTHUR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12-cr-00084-JAW |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## ORDER ON MOTION TO AMEND AND SUPPLEMENTAL
## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION [1]

In this action, Petitioner Lauren MacArthur moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Placeholder Motion, ECF No. 99; Motion, ECF No. 112; First Amended Motion, ECF No. 119; Second Amended Motion, ECF No. 136-1; Third Amended Motion, ECF No. 153-1.)  Following a guilty plea, Petitioner was convicted of possession of a firearm by a felon in violation of 18 U.S.C. 922(g)(1) and 924(e), and possession of stolen firearms in violation of 18 U.S.C. 922(j); the Court sentenced Petitioner to 216 months imprisonment on Count 1 and 120 months on Count 2 to be served concurrently.  (Judgment, ECF No. 78 at 1 – 2.)  The First Circuit affirmed the sentence.  *United States v. MacArthur*, 805 F.3d 385 (1st Cir. 2015).

---

[1] Petitioner filed a motion to amend his § 2255 motion after a recommended decision was issued, (ECF No. 146), but before the Court addressed his objection to the recommended decision.  This supplemental recommended decision is intended to address this latest motion to amend and to supplement the discussion section of the recommended decision with subsection B–3 below.

After several amendments to his section 2255 motion, Petitioner contends he should not have been sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and thus his 216-month sentence exceeds the statutory maximum of ten years pursuant to 18 U.S.C. § 922(g). (Motion at 4 – 15; Second Amended Motion at 12 – 22.) The Government argues the motion should be denied under controlling First Circuit and Supreme Court authority. (Response at 4 – 6, ECF No. 138.)

I grant Petitioner's motion to amend. (Third Motion to Amend, ECF No. 153). Following a review of the record and after consideration of Petitioner's original and amended motions as well as the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's § 2255 motion.

## PROCEDURAL HISTORY AND LEGAL BACKGROUND

### A.    Charges and Plea

In May 2012, Petitioner was indicted on one count of knowingly possessing a firearm after having been convicted of crimes punishable by imprisonment for a term of more than one year, in violation of 18 U.S.C. 922(g)(1) and 924(e); Petitioner was also indicted on one count of knowingly possessing a stolen firearm that had previously traveled in interstate or foreign commerce, in violation of 18 U.S.C. 922(j). (Indictment, ECF No. 4.) Among the prior convictions listed in the indictment were numerous Maine state court Class B felony convictions for burglary. (*Id.*)

In November 2012, Petitioner pled guilty to both counts. (ECF No. 38.) At the change of plea hearing, before accepting Petitioner's guilty plea, the Court confirmed that Petitioner understood that the guilty plea on Count 1 "requires [the Court] to place you in

jail for not less than 15 years, and you could be in jail for the rest of your life." (Change of Plea Hearing Transcript at 7, ECF No. 87.) The Court also confirmed that Petitioner understood the penalties that might be imposed, (*id.* at 5-6), and confirmed that Petitioner understood that the indictment "sets forth 15 separate felonies that it alleges that you have been convicted of." (*Id.* at 6.)

## B.    Legal Background Regarding Enhancements for Prior Convictions

Under 18 U.S.C. § 922(g)(1), a person who has been convicted of a felony who then possesses a firearm faces a fine and imprisonment of "not more than 10 years." *Id.* § 924(a)(2). However, under the ACCA, 18 U.S.C. § 924(e), a felon in possession of firearm who "has three previous convictions . . . for a violent felony or a serious drug offense . . . shall be . . . imprisoned not less than fifteen years . . . ." The term "violent felony" is defined as a crime punishable by imprisonment for more than one year that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," *id.* § 924(e)(2)(B)(i); or (2) "is burglary, arson, or extortion, [or] involves use of explosives," *id.* § 924(e)(2)(B)(ii); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* The first part of the definition is known as the "force clause," the second part of the definition is known as the "enumerated offenses clause," and the third part of the definition is known as the "residual clause." *See United States v. Frates*, 896 F.3d 93, 96 (1st Cir. 2018).

The United States Sentencing Guidelines are used to "guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). The guidelines contain many provisions that

enhance a defendant's recommended sentence when they have one or more prior convictions that qualify as a "crime of violence" or a "controlled substance offense." *See* U.S.S.G. § 4B1.2. For example, the guideline for firearms offenses, U.S.S.G. § 2K2.1, accounts for prior convictions in setting a defendant's base offense level, and the Career Offender guideline, U.S.S.G. § 4B1.1, might enhance a defendant's criminal history category if there are two such qualifying prior convictions. The guideline terms "crime of violence" and "controlled substance offense" have been defined in a similar but not identical manner to the ACCA terms. *See Frates*, 896 F.3d at 96 (explaining that the definition of "crime of violence" mirrored the ACCA until Amend. 798, which eliminated the guideline residual clause and changed the guideline enumerated offenses in 2016). Furthermore, there is an Armed Career Criminal guideline, U.S.S.G. § 4B1.4, which could enhance both a defendant's base offense level and criminal history category if the defendant is a statutory Armed Career Criminal under 18 U.S.C. § 924(e).

"The Supreme Court has held that a sentencing court should use a categorical or modified categorical approach when considering sentencing enhancements based on prior offenses." *United States v. Mohamed*, 920 F.3d 94, 101 (1st Cir. 2019) (citing *Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016); *Taylor v. United States*, 495 U.S. 575, 588 (1990). "In short, [courts] look to the statutory definition of the offense in question, as opposed to the particular facts underlying the conviction." *United States v. Davila-Felix*, 667 F.3d 47, 56 (1st Cir. 2011) (internal quotations omitted). A state statute of conviction can only serve as a predicate offense "if the statute's elements are the same as, or narrower than" the federal elements. *See Descamps v. United States*, 570 U.S. 254, 257 (2013).

When a state statute "sets out a single (or 'indivisible') set of elements" the straightforward categorical approach applies, but when a state statute has "a more complicated (sometimes called 'divisible') structure . . . list[ing] elements in the alternative, and thereby defin[ing] multiple crimes" courts use the modified categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2248 – 49 (2016). Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The modified categorical approach, however, "gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition." *Id.* at 2251.

## C.     Sentencing

In March 2014, the Court sentenced Petitioner to 216 months of imprisonment on Count 1 and 120 months of imprisonment on Count 2, to be served concurrently; the Court also sentenced Petitioner to five years of supervised release on Count 1 and three years of supervised release on Count 2, to be served concurrently. (Judgment, ECF No. 78.) During the sentencing proceedings, Petitioner did not dispute that his burglary convictions qualified as prior convictions under the ACCA, after having the opportunity to review the presentence investigation report in which the Probation Office frequently cited the statutory range of imprisonment pursuant to 18 U.S.C. § 924(e), discussed the burglary convictions individually, and concluded that "[t]he defendant is an armed career criminal."

(Presentence Investigation Report ¶¶ 1, 19, 32, 33, 38, 47, 68.)  Petitioner agreed that the Probation Office's report was accurate.  (Sentencing Transcript at 7 – 8, ECF No. 86.)

When calculating Petitioner's offense level and criminal history score for purposes of his guideline sentence, the Probation Office found that "the defendant has at least three prior convictions for a violent felony or serious drug offense" and therefore concluded that "the defendant is subject to the provisions of the armed career criminal enhancements at USSG § 4B1.4." (PSR ¶ 19.)  However, because the calculation of Petitioner's offense level and criminal history score based on the other guidelines provisions was higher than the range under § 4B1.4, the armed career criminal guideline enhancement was not used to calculate his guideline sentence range.  (*Id.*)

## D.    Appeal

Petitioner appealed from the sentence and argued that: (1) his prior burglary convictions were not predicate offenses for purposes of the career offender sentencing guideline enhancement, U.S.S.G. § 2K2.1; (2) he should have received a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1; and (3) his decision to flee from police was double counted under the guidelines.  *MacArthur*, 805 F.3d at 387 – 90.  Petitioner also argued that Maine's burglary statute is unconstitutional and questioned whether his prior convictions qualified as predicate offenses under 18 U.S.C. § 924(e).  *Id.* at 390 – 91.  In November 2015, the First Circuit rejected Petitioner's arguments and affirmed Petitioner's sentence.[2]  *Id.* at 387 – 91.

---

[2] The First Circuit rejected Petitioner's pro se arguments about the ACCA at least in part because he "was not sentenced pursuant to that statute."  *Id.* at 390.  While Petitioner challenges that statement, the First Circuit likely referred to the fact that Petitioner's guideline sentence range was not impacted by his status

**E.  Subsequent Legal Developments and Petitioner's Motion**

While Petitioner's appeal was still pending, on June 26, 2015, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (hereinafter *Johnson II*), which declared the ACCA's residual clause unconstitutionally vague, but left the force and enumerated offense clauses intact.  *Id.* at 2563.  After his unsuccessful appeal, Petitioner filed a motion in March 2016 to have the Court appoint counsel to challenge his sentence under *Johnson II*.  (Motion to Appoint Counsel, ECF No. 91.)  The Court granted Petitioner's motion and appointed counsel to represent Petitioner on the *Johnson II* issue; after assessing Petitioner's case, counsel withdrew because *Johnson II* did not apply given that the Court did not rely on the residual clause in sentencing Petitioner.  (Order, ECF No 92; Motion to Withdraw, ECF No. 94; Order, ECF No. 95.)

In March and April 2016, Petitioner renewed his request for counsel in order to challenge his sentence under *Johnson II*; the Court denied his request.  (Motions, ECF Nos. 96, 97; Order, ECF No. 98.)  The Court explained that his statutory sentencing range was properly determined under 18 U.S.C. § 924(e) based on his prior burglary convictions, (Order at 7 – 9, ECF No. 98), that his guideline range was not impacted by his status under that statute, (*id.* at 9 – 10) and that Petitioner was free to file a petition without counsel, (*id.* at 10 – 11).  The Court also explained that the First Circuit had recently applied the categorical approach to Maine's burglary statute in *United States v. Duquette*, 778 F.3d 314 (1st Cir. 2015).  (*Id.* at 8 – 9 n.3).  In *Duquette*, the First Circuit held that Maine's

---

as an armed career criminal under that statute.  Regardless, the record establishes that his statutory range of imprisonment was set by 18 U.S.C. § 924(e), while the guideline recommendation for a sentence within that statutory range did not rely on his status as an armed career criminal.  *See infra* at subsection E.

burglary statute substantially corresponds to the generic definition of burglary under federal law, meaning that "a conviction under that statute qualifies as a 'violent felony' under the ACCA." *United States v. Duquette*, 778 F.3d 314, 318 (1st Cir. 2015).

In June 2016, while his petition for a writ of certiorari was still pending before the Supreme Court, Petitioner filed a "placeholder" or "protective" § 2255 motion in order to ensure that any claim that he had arising from *Johnson II* did not become subject to the one-year statute of limitations.[3] (Motion, ECF No. 99.) Petitioner claimed his prior convictions did not qualify under the ACCA, and that his counsel was ineffective for failing to assert the argument. (*Id.* at 1, 3.) After counsel was appointed, Petitioner voluntarily withdrew his protective petition in December 2016, after the Supreme Court denied his petition for a writ of certiorari on his direct appeal. (Motion to Withdraw, ECF No. 108.)

In September 2017, Petitioner filed the § 2255 motion presently before the Court. (Motion, ECF No. 112.) Petitioner argued that a conviction under Maine's burglary statute does not qualify as a prior conviction under the ACCA because the Maine statute is broader than the generic definition of burglary for purposes of the ACCA because the Maine law: (1) covers vehicles and conveyances adapted for overnight accommodation, and (2) allows an inference of burglary based on exclusive possession of property recently stolen in a burglary. (*Id.*) At Petitioner's request, the Court stayed the proceedings for several months while the First Circuit considered several other § 2255 cases that challenged *Duquette*'s holding that convictions under Maine's burglary statute qualify as violent felonies under

---

[3] Concerning protective filings generally, *see Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

the ACCA. (Motion to Stay, ECF No. 113; Order, ECF No. 114.) In February 2018, the First Circuit decided the consolidated § 2255 petitions in which the challenge was asserted. *See Dimott v. United States*, 881 F.3d 232 (1st Cir. 2018). The First Circuit did not reach the merits of the petitions or reconsider *Duquette* because it determined that the petitioners' claims were time barred. *Id.* at 238, 243.

In April 2018, Petitioner amended his § 2255 motion and clarified that his challenge concerning the Maine burglary statute does not assert a claim under *Johnson II*, but asserts a claim under *Mathis v. United States*, 136 S. Ct. 2243 (2016) (refining the ACCA categorical analysis of an enumerated offense originally applied in *Taylor*). (Motion to Amend, ECF No. 119; Order, ECF No. 124.) The Court subsequently stayed the habeas proceedings while the Supreme Court considered a challenge to another state burglary statute involving the issue regarding vehicles and other structures adapted for overnight accommodations. (Motion to Stay, ECF No. 125; Order, ECF No. 126.) In December 2018, the Supreme Court held that the federal definition of "burglary" in the ACCA includes "a structure or vehicle that has been adapted or is customarily used for overnight accommodation." *United States v. Stitt*, 139 S. Ct. 399, 404 (2018).

On January 2, 2019, Petitioner filed a motion for leave to amend his § 2255 motion for a second time. (ECF No. 136.) In Petitioner's proposed amended motion, (ECF No. 136-1), he did not reassert the argument about vehicles and structures adapted for overnight accommodations as in *Stitt*, but instead asserted that Maine's burglary statute is broader than federal generic burglary because: (1) it purportedly covers areas more akin to curtilage than the inside of a structure, such as the plumbing under a camp sitting on a post

foundation, (*id.* at 19 – 20); (2) Maine law allows the jury to make an inference of burglary based on evidence of exclusive possession of property recently stolen in a burglary, (*id.* at 20 – 21); and (3) the statute purportedly covers attempted burglary, (*id.* at 21 – 22). The Government responded to the motion on January 16, 2019. (Response, ECF No. 138.) After the Court stayed the proceedings for several months at Petitioner's request, in Petitioner's reply on July 26, 2019, he clarified that he still asserts that Maine's burglary statute is broader than generic burglary because it covers some vehicles and moveable structures even when they are not adapted for overnight accommodation. (Reply, ECF No. 143; Motion to Stay, ECF No. 139; Order, ECF No. 140; Motion to Lift Stay, ECF No. 141; Order, ECF No. 144.)

In June 2019, the Supreme Court decided R*ehaif v. United States*, 139 S. Ct. 2191 (2019), in which the Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. In December 2019, Petitioner filed a motion to amend his § 2255 motion to assert a claim under *Rehaif.* (ECF No. 153.)[4]

## DISCUSSION

### A.    Motions to Amend

Petitioner's motions to amend is governed by Federal Rule of Civil Procedure 15. *See* 28 U.S.C. § 2242 (habeas petitions "may be amended or supplemented as provided in

---

[4] As discussed in footnote 1, Petitioner filed that most recent motion to amend after a recommended decision was issued in October 2019 but before the Court addressed his objection. (ECF No. 146.) This supplemental recommended decision follows as a result of that sequence of events.

the rules of procedure applicable to civil actions"); Rules Governing Section 2255 Proceedings, Rule 12 (providing that the Federal Rules of Civil Procedure apply, to the extent they are not inconsistent with statutory provisions or the Rules Governing Section 2255 Proceedings).

Rule 15(a)(1) permits a litigant to amend a pleading "once as a matter of course," subject to certain time constraints. Fed. R. Civ. P. 15(a)(1). However, when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Because Petitioner sought to amend his motion following a series of relevant court decisions, I grant his third request to amend his § 2255 motion and consider the amendments in the analysis of his arguments.

**B.      Section 2255 Motion**

**1.      Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the

sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United*

*States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### 2.    Categorical Approach and Maine's Burglary Statute

Under Maine law, "[a] person is guilty of burglary if" "[t]he person enters or surreptitiously remains in a structure knowing that that person is not licensed or privileged to do so, with the intent to commit a crime therein." 17-A M.R.S. § 401(1)(A). A violation of that provision is a Class C crime. *Id.* If a person violates that provision under certain specified circumstances, the crime can be enhanced to a Class A or B crime. *Id.* § 401(1)(B)(1) – (5).

"[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. Generic burglary does not cover vehicles and other structures like "boats and vessels often at sea (and railroad cars often filled with cargo, not people)" unless they are designed, adapted or are "customarily used for overnight accommodation". *Stitt*, 139 S. Ct. at 403, 407; *see also Taylor*, 495 U.S. at 607 ("A few States' burglary statutes . . . define burglary more broadly, e.g., by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings").

The First Circuit has analyzed Maine's burglary statute for its consistency with generic burglary and held that "a conviction under that statute qualifies as a 'violent felony' under the ACCA." *United States v. Duquette*, 778 F.3d 314, 318 (1st Cir. 2015). The Court is still bound by that conclusion. The First Circuit also considered and rejected Petitioner's § 924(e) challenge on direct appeal, *MacArthur*, 805 F.3d at 390, and courts will generally not reconsider claims already decided on direct appeal. *See Singleton*, 26 F.3d at 240. Even if Petitioner's most recent arguments concerning his prior convictions were not precluded, his remaining arguments lack merit.

Petitioner first argues that Maine's statute covers entry into the curtilage, which is not covered under generic burglary. *See James v. United States*, 550 U.S. at 212 ("the inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of "generic burglary" set forth in *Taylor*") (holding that statute was violent felony under ACCA residual clause overruled by *Johnson II*); *Vitko v. United States*, No. 1:08-CR-

15

00171-JAW, 2016 WL 1312522, at *11 (D. Me. Apr. 4, 2016).  Maine law does not explicitly cover curtilage, but Petitioner argues that it essentially does because the Maine Supreme Judicial Court, sitting as the Law Court, upheld a burglary conviction for stealing copper pipes from the area under a camp sitting on a post foundation.  *See State v. Cook*, 2010 ME 85, ¶ 14, 2 A.3d 333, 338.  The Law Court emphasized, however, that the foundation area was enclosed "by skirting or lattice," which the defendants had cut in order to enter and gain access to the copper pipe.  *Id.*  Petitioner has not shown that the area would be considered any differently under the generic version of burglary.  Because the defendants in *Cook* had to cut the outer boundary of the foundation to gain entry, the area was beyond merely the curtilage—or the "land or yard" adjacent to a house, *Curtilage*, Black's Law Dictionary (11th ed. 2019)—and is more similar to a basement, which would presumably be considered part of the house.

Second, Maine's law allowing the jury to make the "permissible inference" that a person in "exclusive possession" of stolen property was the person who stole that property does not render Maine's burglary statute broader than generic burglary.  The First Circuit recently rejected a similar challenge, drawing a distinction between statutory permissible inferences (which do not broaden a state statute beyond the federal version) and irrebuttable presumptions (which do broaden a state statute beyond the federal version).  *See United States v. Mohamed*, 920 F.3d 94, 104 – 105 (1st Cir. 2019).

Third, while attempted burglary does not constitute a violent felony under the ACCA, *see James*, 550 U.S. at 197 (attempted burglary "is not 'burglary' because it does not meet the definition of burglary under ACCA that this Court set forth in *Taylor*"), the

record lacks any evidence to suggest that any of Petitioner's convictions involved attempted burglary, rather than completed burglaries. Petitioner has not demonstrated that Maine's burglary statute alone covers attempted burglaries, as contrasted with its separate attempt statute, 17-A M.R.S. § 152.

Finally, Maine law defines the term "structure" to mean "a building or other place designed to provide protection for persons or property against weather or intrusion," but limits that definition in that it "does not include vehicles and other conveyances whose primary purpose is transportation of persons or property *unless such vehicle or conveyance, or a section thereof, is also a dwelling place.*" 17-A M.R.S. § 2(24) (emphasis supplied). Furthermore, Maine law defines a "dwelling place" as "a structure that is adapted for overnight accommodation of persons . . . " *id.* § 2(10), a definition that is substantially the same as the one upheld in *Stitt.* Petitioner's argument that Maine's statute is broader than the generic definition because of its treatment of moveable and temporary structures has no merit after *Stitt*.[5]

In short, binding precedent forecloses Petitioner's request for relief and Petitioner's arguments concerning his prior convictions otherwise lack merit.

---

[5] Petitioner apparently contends that the statutory definition of "dwelling place" does not limit the entire statute because the term is also used in one of the paragraph (B) provisions enhancing the offense to a Class B crime, which he believes cannot be considered under the categorical approach. Even if Petitioner were correct about the paragraph (B) enhancement, the "dwelling place" definition is incorporated through the statutory definition of "structure" and therefore operates independently of those enhancements whenever the "structure" in question is a vehicle or conveyance.

### 3. *Rehaif* Claim

One of the statutes underlying Petitioner's conviction, 18 U.S.C. § 922(g), makes it unlawful for certain persons, including individuals with prior felony convictions, *id.* § 922(g)(1), to possess most firearms. The provision contains three elements: (1) a status element (belonging to one of the listed categories of persons), (2) a possession element, and (3) a jurisdictional element (in or affecting commerce). *Rehaif*, 139 S. Ct. at 2196. Before 2019, courts interpreted the word "knowingly" in the penalty provision § 924(a)(2) to apply only to the possession element, but under *Rehaif*, "knowingly" also applies to the status element. *Id.* "To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194.

Petitioner argues *Rehaif* shows that his guilty plea was not voluntary because he was not aware at the time of the plea that the Government not only had to prove that he possessed a firearm but also that he knew was a felon at the time of the possession. A guilty plea is constitutionally valid only if it is voluntarily and intelligently entered. *Brady v. United States*, 397 U.S. 742, 748 (1970). Because a guilty plea is not intelligently made when the defendant did not receive "real notice of the true nature of the charges," if Petitioner could prove that he, counsel, and the court misunderstood the essential elements of a crime, his plea would likely be susceptible to a constitutional challenge. *See Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609 (1998).

Petitioner was not convicted under § 924(a)(2); he was convicted under § 924(e), which does not contain the word "knowingly." *Rehaif*, therefore, does not necessarily

apply to Petitioner's conviction. However, because the law contains a firmly embedded historical presumption that criminal penalties contain a mental state or mens rea element even when a statute is silent on the matter, *see Staples v. United States*, 511 U.S. 600, 605–06 (1994), *Rehaif* might apply to convictions under subsection (e).

The next issue is the retroactive application of *Rehaif*. In general, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989). "Teague and its progeny recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules." *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016). "First, new substantive rules generally apply retroactively. Second, new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect." *Id.* (citations, quotations, and modifications omitted).

The exception for new watershed rules of procedure is "extremely narrow," and the sole example has been the right to counsel recognized in *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See Whorton v. Bockting*, 549 U.S. 406, 417–19 (2007). The exception for substantive rules "includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004) (citations omitted). As the Government concedes, because *Rehaif* more narrowly interpreted the scope of a federal criminal statute, it is not subject to the *Teague* rule against retroactivity.

Even though *Rehaif* "is not *Teague*-barred" and therefore can potentially apply on postconviction review, "there are nonetheless significant . . . hurdles" that petitioners may still have to overcome. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). In general, a claim that was not raised on appeal is procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Frady*, 456 U.S. at 167–68; *Bousley*, 523 U.S. at 621–22). "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law," *Martinez v. Ryan*, 566 U.S. 1, 10 (2012), or by showing that a miscarriage of justice would occur because, "in light of new evidence, it is more likely than not" that the petitioner is actually innocent of the crime. *House v. Bell*, 547 U.S. 518, 536–39 (2006) (quotation omitted).

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded" the ability to comply with the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). This can occur if government interference made compliance impractical, *see id.*, or if there was constitutionally ineffective assistance of counsel, *see Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991). Furthermore, if a claim "is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for [the] failure to raise the claim . . ." *Reed v. Ross*, 468 U.S. 1, 16, 104 S. Ct. 2901 (1984). A petitioner cannot establish a claim was "not reasonably available to counsel" just because of the perception that "a claim was unacceptable to that particular court at that particular time," *see Bousley*, 523 U.S. at 622–23, but a claim is deemed unavailable when it results from a "clear break with the past" in a new Supreme Court case:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

*Ross*, 468 U.S. at 17 (citations, quotations, and modifications omitted). While it "present[s] a more difficult question" when a claim implicates the third category, "[b]y definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that this Court has ultimately adopted." *Id.*

Because the Supreme Court "overturn[ed] the long-established interpretation" of § 922(g), which was "used in thousands of cases for more than 30 years," and on which the circuit courts were unanimous, *see Rehaif*, 139 S. Ct. at 2201 (Alito, J. dissenting), Petitioner's procedural default falls within the second *Ross* category.[6] For that reason, his

---

[6] Some courts have doubted the continued vitality of the second *Ross* category after the *Bousley* Court's rejection of cause based on perceived futility while noting that the issue was not novel because it was raised (and rejected) in many other cases. *See e.g.*, *Simpson v. Matesanz*, 175 F.3d 200, 212 (1st Cir. 1999); *United States v. Moss*, 252 F.3d 993, 1002 (8th Cir. 2001); *Richardson v. Lemke*, 745 F.3d 258, 274 (7th Cir. 2014). The First Circuit also noted that strict rejection of futility arguments may "encourage[ ] litigants to raise over and over issues seemingly already settled in the circuit." *Brache v. United States*, 165 F.3d 99, 103 (1st Cir. 1999). The Government, citing Bousley, argues that the claim was not unavailable because there were many other cases preceding Petitioner's appeal that raised the issue. More recently, the First Circuit reaffirmed that lower courts are bound by the *Ross* Court's statements regarding the second category of "unavailable" claims. (*Lassend v. United States*, 898 F.3d 115, 122 (1st Cir. 2018). At least one other circuit court has interpreted *Bousley*'s rejection of futility arguments somewhat narrowly. *See Gutierrez v. Smith*, 702 F.3d 103, 111–12 (2d Cir. 2012) ("futility may constitute cause where prior state case law has consistently rejected a particular constitutional claim. But futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time") (citing *Bousley*) (citation and quotation marks omitted).

attorney had no reasonable basis to raise the knowledge-of-status issue before the district court or on appeal. Cause thus exists to excuse that procedural default.

To establish prejudice from the asserted violation of federal law, a petitioner must show "a reasonable probability that, but for [the] errors, the result of the proceeding would have been different." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citing *Strickland*) (internal quotation omitted). A petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. In the context of a guilty plea, to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhar*t, 474 U.S. 52, 59 (1985); *see also Lee*, 137 S. Ct. at 1964.[7]

The record, including the presentence investigation report, shows that Petitioner had numerous prior felony convictions over many years before the § 922(g) conviction at issue in his § 2255 motion. As a result, the record does not support a finding that Petitioner would not have plead guilty and the record would not support a guilty finding even if *Rehaif* had been decided before Petitioner entered his plea. That is, the record establishes that the Government would have been able to prove beyond a reasonable doubt that Petitioner knew of his prohibited status at the time he possessed the firearm. Under the circumstances,

---

[7] *Lee* and *Hill* referred to prejudice in the context of an ineffective assistance of counsel claim, not in the context of a procedural default, but there does not appear to be a meaningful difference between the two prejudice inquiries. *See Lynch v. Ficco*, 438 F.3d 35, 49 (1st Cir. 2006) ("if a habeas petitioner can meet the prejudice standard needed to establish ineffective assistance under *Strickland*, then the prejudice standard under the 'cause and prejudice' showing to excuse a procedural default is also met").

Plaintiff's argument that he would not have plead guilty based on the *Rehaif* issue is implausible. There is also no suggestion that Petitioner was prejudiced in any other way, such as at sentencing. Accordingly, Petitioner was not prejudiced as a result of any *Rehaif*-related issue or error,[8] and thus Petitioner is not entitled to postconviction relief.

## CONCLUSION

Based on the foregoing analysis and the analysis set forth in the original recommended decision (ECF No. 146), I grant Petitioner's motion to amend. (Motion, ECF No. 153.) In addition, an evidentiary hearing on Petitioner's section 2255 motion, as amended, is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. Furthermore, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I also recommend that the Court deny a certificate of appealability.

## NOTICE

Any objection to the order on Petitioner's motion to amend shall be filed in accordance Federal Rule of Civil Procedure 72 and Federal Rule of Criminal Procedure 59.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within forty-four

---

[8] For the same reason, Petitioner cannot show that it was more likely than not that he was actually innocent of the crime. While a narrowed interpretation of a criminal statute can create a situation where a defendant was actually innocent of the crime as properly interpreted, *see Bousley*, 523 U.S. at 624 (remanding for consideration of innocence in light of narrowed interpretation of statute), the record forecloses any likelihood of innocence in Petitioner's case.

(44) days of being served with a copy thereof.[9] A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.[10]

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 2nd day of April, 2020.

---

[9] Federal Rule of Civil Procedure 72(b)(2) and Federal Rule of Criminal Procedure 59(b)(2) provide for a 14-day objection period. The Court, however, recently extended by 30 days any deadline between the date of the order (March 18, 2020) and May 1, 2020. (General Order 2020-2.)

[10] Because this supplemental recommendation in part reiterates the analysis conclusions of the original recommended decision, Petitioner's objection to the original recommended decision (ECF No. 146) shall be deemed an objection to this recommended decision. Petitioner may file a separate objection to supplement his original objection.