## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

LAUREN MACARTHUR,                )
                                 )
                Petitioner,      )
                                 )        1:12-cr-00084-JAW
        v.                       )        1:17-cv-00383-JAW
                                 )
UNITED STATES OF AMERICA,        )
                                 )
                Respondent.      )

## ORDER AFFIRMING RECOMMENDED DECISION ON
## 28 U.S.C. § 2255 MOTION

The Petitioner sets out over twenty objections to the Magistrate Judge's recommended decision to deny his habeas corpus petition, including his assertion that his prior Maine burglary convictions do not qualify as predicate offenses under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and that his guilty plea was not knowing and voluntary.  The Court analyzes each contention and rejects them as unsupported by the record or incorrect on the law.

## I.    BACKGROUND

On May 17, 2012, a federal grand jury returned a two-count indictment as to Lauren MacArthur for 1) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(e), and 2) possession of stolen firearms in violation of 18 U.S.C. § 922(j).  *Indictment* (ECF No. 4).  On November 26, 2012, Mr. MacArthur pleaded guilty to the charged crimes, *Min. Entry* (ECF No. 38), and on March 12, 2014, the Court sentenced him to two hundred sixteen months of incarceration on count one and one hundred twenty months of incarceration on count two, to be served

concurrently, five years of supervised release for count one and three years of supervised release for count two, to be served concurrently, a $200 special assessment and no fine. *Min. Entry* (ECF No. 73); *J.* (ECF No. 78). Mr. MacArthur appealed his sentence to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 80). On November 9, 2015, the First Circuit affirmed this Court's sentence. *J.* (ECF No. 89); *United States v. MacArthur*, 805 F.3d 385 (1st Cir. 2015). The Court received the mandate on January 13, 2016. *Mandate* (ECF No. 90). On October 3, 2016, the United States Supreme Court denied Mr. MacArthur's petition for writ of certiorari. *MacArthur v. United States*, 137 S. Ct. 87 (2016).

On June 24, 2016, Mr. MacArthur filed a placeholder motion to correct his sentence under 28 U.S.C. § 2255 while he awaited decision on his petition for writ of certiorari pending before the Supreme Court. *Def.'s Mot. to Correct Sentence Under 28 U.S.C. § 2255* (ECF No. 99). After the Supreme Court denied certiorari, Mr. MacArthur moved to dismiss the placeholder motion to refile a new habeas petition, *Def.'s Mot. to Withdrawal and Dismiss 2255 Petition Without Prejudice* (ECF No. 108), which the Court granted. *Order Granting Mot. to Dismiss 2255 Without Prejudice* (ECF No. 109).

On September 29, 2017, Mr. MacArthur filed a motion to correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his predicate burglary offenses should not be considered for purposes of the Armed Career Criminal Act (ACCA). *Def.'s Mot. to Correct Sentence Under 28 U.S.C. § 2255* (ECF No. 112) (*Pet'r's 2255 Mot.*). What followed was a series of motions to stay and amend filed by Mr. MacArthur, asking

2

the Court to stay any further action until the appellate courts decided certain cases and to allow him to add additional arguments to his § 2255 motion.

First, the same day he filed his renewed § 2255 motion, he moved to stay the case pending the First Circuit's decisions in *United States v. Dimott*, 06-cr-26-GZS, No. 16-2289, *United States v. Collamore*, 10-cr-158-GZS, No. 16-2319, and *United States v. Casey*, 11-cr-216-DBH, No. 16-2368, *Def.'s Mot. to Stay* (ECF No. 113), which the Court granted. *Order Granting Mot. to Stay* (ECF No. 114). The First Circuit consolidated the appeals and decided those cases together on February 2, 2018 under the case name of *Dimott v. United States*, 881 F.3d 232 (1st Cir. 2018). Claiming that *Dimott* did not decide the questions raised in his § 2255 petition, Mr. MacArthur then requested that the Court lift its stay and order the Government to respond. *Mot. to Lift Stay* (ECF No. 116). The Court granted the motion and ordered the Government to answer. *Order Granting Mot. to Lift Stay* (ECF No. 117); *Order to Answer* (ECF No. 118).

On April 13, 2018, Mr. MacArthur moved pro se to amend his § 2255 motion. *Amendment to 28 U.S.C. § 2255 Under Fed. R. Civ. P. 15(c)(2)* (ECF No. 119) (*Pet'r's Am. 2255 Mot.*). Six days later he moved to proceed pro se, *Mot. to Proceed Pro-Se* (ECF No. 120), and his attorney David Beneman moved to withdraw. *Mot. to Withdraw* (ECF No. 121). The Court granted Attorney Beneman's motion to withdraw, allowed Mr. MacArthur to proceed pro se, and granted his motion to amend. *Order Granting Mot. to Withdraw as Attorney* (ECF No. 122); *Order Mooting*

*Mot. to Proceed Pro Se* (ECF No. 123); *Order Granting Without Obj. Mot. to Amend* (ECF No. 124). Mr. MacArthur has been pro se ever since.[1]

On April 27, 2018, Mr. MacArthur again moved to stay pending the Supreme Court's determination of *United States v. Stitt*, No. 17-765, and *United States v. Sims*, No. 17-766, *Def.'s Mot. to Stay* (ECF No. 125), which the Court granted. *Order Granting Without Obj. Pet'r's Mot. to Stay* (ECF No. 126). On December 10, 2018, the Supreme Court ruled on both cases, *United States v. Stitt*, 139 S. Ct. 399 (2018), and the Court proceeded to remove the stay and order the Government to respond to Mr. MacArthur's § 2255 Motion. *Order on Stay and Order to Answer* (ECF No. 135).

On January 2, 2019, Mr. MacArthur moved to file a second amended § 2255 petition. *Mot. for Leave to File Amendment to 28 U.S.C. § 2255* (ECF No. 136) (*Pet'r's Second Am. 2255 Mot.*). On January 16, 2019, the Government responded in opposition to Mr. MacArthur's § 2255 motion. *Gov't's Resp. in Opp'n to Mot. to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255* (ECF No. 138). Mr. MacArthur requested another motion to stay pending the First Circuit's decision in *Yeaton v. United States*, No. 17-1452, *Mot. to Stay* (ECF No. 139), which the Court granted. *Order on Mot. to Stay* (ECF No. 140). On July 26, 2019, Mr. MacArthur requested that the Court lift the stay and allow him to file his reply to the Government because he determined *Yeaton* raised a different issue and the case would probably not help him. *Mot. to Lift Stay* (ECF No. 141). The Court granted

---

[1]    Three times Mr. MacArthur requested that the Court appoint counsel to represent him in this matter, *Mot. for Appointment of Counsel* (ECF No. 159, 168, 170) and each time the Magistrate Judge determined that appointment of counsel was not warranted. *Order on Mot. to Appoint Counsel* (ECF No. 162, 169, 171).

his motion, *Order Granting Mot. to Lift Stay* (ECF No. 144), and Mr. MacArthur filed his reply to the Government's response. *MacArthur's Reply to Gov't's Opp'n to His 2255* (ECF No. 143).

On October 16, 2019, the Magistrate Judge issued his Report and Recommended Decision on Mr. MacArthur's § 2255 motion, granting Mr. MacArthur's second motion to amend but recommending that this Court dismiss his motion. *Order on Mot. to Amend and Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 146) (*Recommended Decision*). Mr. MacArthur subsequently moved to stay this action for the fourth time, citing the need to brief the implications of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), *Mot. to Stay* (ECF No. 148), and separately asked for a forty-five day extension to file his objections to the Recommended Decision. *Mot. for Time Extension* (ECF No. 149). The Court granted his motion for time extension, *Order Granting Mot. to Extend Time to File Obj. to Recommended Decision* (ECF No. 150), but denied his motion to stay because Mr. MacArthur was first required to seek leave to amend his § 2255 motion. *Order on Mot. to Stay* (ECF No. 151).

On December 16, 2019, Mr. MacArthur filed his objections to the Recommended Decision, *Obj. to Magistrate's Report and Recommended Decision* (ECF No. 152) (*Pet'r's Obj.*), and moved for leave to file an amended § 2255 motion stating his *Rehaif* claim. *Mot. for Leave to File an Amendment to 28 U.S.C. § 2255* (ECF No. 153) (*Pet'r's Third Am. 2255 Mot.*). On December 30, 2019, the Government responded in opposition to his objections, relying on its previous filing at ECF No.

138.  *Gov't's Resp. to Pet'r's Obj. to Magistrate's Report and Recommendation* (ECF No. 154) (*Gov't's Opp'n*).   The Government subsequently responded to Mr. MacArthur's motion to amend, asking the Court to deny that motion.  *Gov't's Resp. to Pet'r's Mot. for Leave to File an Amended 28 U.S.C. § 2255 Pet.* (ECF No. 156). Mr. MacArthur requested an extension of time to file a reply to the Government's opposition to his motion to amend, *Mot. for Extension of Time to File Reply* (ECF No. 158), which the Court granted.  *Order Granting Mot. to Extend Time for Leave to File Am. Section 2255 Mot.* (ECF No. 160); *Am. Order Granting Mot. to Extend Time to File Reply* (ECF No. 161).  On March 9, 2020, Mr. MacArthur filed his reply.  *Movant's Reply to Mot. to Amend* (ECF No. 163).

On April 2, 2020, the Magistrate Judge issued a supplemental report and recommended decision, granting Mr. MacArthur's third motion to amend, but recommending that the Court dismiss his § 2255 motion.  *Order on Mot. to Amend and Suppl. Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 164).  The Magistrate Judge subsequently filed an amended supplemental recommended decision to correct a typographical error.  *Am. Order on Mot. to Amend and Suppl. Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 166) (*Am. Suppl. Recommended Decision*).  Mr. MacArthur twice moved for an extension of time to file objections due to COVID-19, *Mot. for Extension of Time* (ECF No. 172, 174), which the Court granted.  *Order Granting Mot. to Extend Time to File Obj. to Order* (ECF No. 173, 175).

On May 13, 2020, Mr. MacArthur filed a motion to present a structural argument in objection to the Amended Supplemental Recommended Decision, *Mot. to Present Structural Argument in Obj. to Magistrate's R&R* (ECF No. 176), which the Court granted. *Order Granting Mot. to Present Structural Argument in Obj. to Recommended Decision* (ECF No. 177). The Government responded in opposition on June 3, 2020. *Gov't Resp. to Pet'r's Obj. to Magistrate Judge's Recommended Decision* (ECF No. 181). On June 15, 2020, Mr. MacArthur filed his objection to the Amended Supplemental Recommended Decision. *Suppl. Obj.* (ECF No. 182) (*Pet'r's Suppl. Obj.*). The Government responded in opposition on June 29, 2020. *Gov't Resp. to Pet'r's Obj. to Magistrate Judge's Suppl. Report and Recommended Decision* (ECF No. 183) (*Gov't's Opp'n to Pet'r's Suppl. Obj.*). On October 1, 2020, Mr. MacArthur wrote a letter to the Court, notifying it of a First Circuit case, *United States v. Lara*, 970 F.3d 68 (1st Cir. 2020). *Letter in Supp. of Mot. to Vacate, Set Aside or Correct Sentence* (2255) (ECF No. 184).

## II.   THE RECOMMENDED DECISION

### A.      Recommended Decision

The Magistrate Judge concluded that Mr. MacArthur's argument that his prior Maine burglary convictions were not predicate offenses under the ACCA lacked merit. *Recommended Decision* at 2. Mr. MacArthur argued that Maine's burglary statue is broader than a "generic" burglary statute, and thus violations of Maine's burglary statute should not count as a "violent felony" under the ACCA. *Id.* at 15-17. The Magistrate Judge first looked to First Circuit precedent in *United States v. Duquette*,

778 F.3d 314 (1st Cir. 2015), in which the First Circuit analyzed Maine's burglary statute for its consistency with generic burglary and held that "a conviction under that statute qualifies as a 'violent felony' under the ACCA." *Id.* at 14-15 (quoting *Duquette*, 778 F.3d at 318). The Magistrate Judge concluded that he was bound by that conclusion and thus Mr. MacArthur's previous burglary convictions under Maine's burglary statute could be considered under the ACCA. *Id.* The Magistrate Judge also stated that because the First Circuit already considered and rejected Mr. MacArthur's ACCA challenge on direct appeal, it may be inappropriate to reconsider his claims here. *Id.* at 15. Notwithstanding any issue of preclusion, however, the Magistrate Judge proceeded to consider Mr. MacArthur's four main arguments.

The Magistrate Judge first rejected Mr. MacArthur's argument that Maine's burglary statute covers entry into the curtilage, which is not covered under generic burglary, by distinguishing the Maine State case, *State v. Cook*, 2010 ME 85, 2 A.3d 333. *Id.* at 15-16. Second, the Magistrate Judge concluded that "Maine's law allowing the jury to make the 'permissible inference' that a person in 'exclusive possession' of stolen property was the person who stole that property does not render Maine's burglary statute broader than generic burglary." *Id.* at 16. Third, the Magistrate Judge considered that while attempted burglary does not constitute a violent felony under the ACCA, Mr. MacArthur's past offenses involved only completed burglaries, not attempted ones. *Id.* Finally, the Magistrate Judge concluded that Mr. MacArthur's argument that Maine's burglary statute is broader than the generic

definition because of its treatment of movable and temporary structures "has no merit after *Stitt*." *Id.* at 16-17.

### B. Supplemental Recommended Decision

The Magistrate Judge's Supplemental Recommended Decision restated its prior conclusions that Maine's burglary statute is not broader than generic burglary. In addition, it addressed Mr. MacArthur's new argument that under *United States v. Rehaif*, 139 S. Ct. 2191 (2019), his guilty plea was not voluntary because he was not aware at the time of the plea that the Government had to prove not only that he possessed a firearm but also that he knew he was a felon at the time of the possession. *Am. Suppl. Recommended Decision* at 18. The Magistrate Judge first considered that Mr. MacArthur was convicted under 18 U.S.C. § 924(e), which does not contain the word "knowingly," and therefore the Magistrate Judge concluded that *Rehaif* may not apply to Mr. MacArthur's conviction. *Id.* at 18-19.

Notwithstanding any applicability issue, the Magistrate Judge considered Mr. MacArthur's *Rehaif* argument and found that it is not subject to the bar against retroactivity in *Teague v. Lane*, 489 U.S. 288 (1989). *Id.* at 19-20. The Magistrate Judge next looked at the issue of procedural default because Mr. MacArthur did not raise the *Rehaif* issue on his appeal. *Id.* at 20. Looking to *Reed v. Ross*, 468 U.S. 1 (1984), the Magistrate Judge concluded that there is cause to excuse Mr. MacArthur's procedural default because *Rehaif* overturned a long-established interpretation of § 922(g). *Id.* at 20-22. Finally, the Magistrate Judge addressed whether prejudice existed, and concluded that "the record does not support a finding that

[Mr. MacArthur] would not have plead guilty and the record would support a guilty finding even if *Rehaif* had been decided before [Mr. MacArthur] entered his plea." *Id.* at 23. In other words, "the record establishes that the Government would have been able to prove beyond a reasonable doubt that [Mr. MacArthur] knew of his prohibited status at the time he possessed the firearm." *Id.* Because there is no suggestion of any other prejudice, the Magistrate Judge concluded that Mr. MacArthur was not entitled to postconviction relief. *Id.*

## III.   THE POSITIONS OF THE PARTIES

### A.   Lauren MacArthur's Objection to the Recommended Decision

In his thirty-eight-page objection, Mr. MacArthur advances twenty-one objections to the Magistrate Judge's Recommended Decision. Many objections are overlapping but can roughly be divided into the following categories: whether his sentence was impacted by the ACCA, the Magistrate Judge's use of a "modified categorical" analysis, invocation of the "law of the case" and "law of the circuit" doctrines, whether the Maine burglary statute is non-generic, the Magistrate Judge's summary dismissal and denial of an evidentiary hearing, and his denial of a certificate of appealability. Mr. MacArthur also sets out his own proposed legal standard and argues that his second amended § 2255 petition is the controlling memorandum of law, not his original motion.

### B.   Government's Opposition

The Government responds in opposition but does not file a new response brief. Rather, it claims that Mr. MacArthur's objection "does not raise any issues that have

not already been addressed in the Recommended Decision on 28 U.S.C. § 2255" and therefore the Government "relies upon its previous filing (ECF No. 138) and agrees with the analysis and the conclusion of the Recommended Decision." *Gov't's Opp'n* at 1.

### C.    Lauren MacArthur's Objection to the Amended Supplemental Recommended Decision

After the Magistrate Judge issued his Amended Supplemental Recommended Decision to address Mr. MacArthur's *Rehaif* claim, Mr. MacArthur filed a thirty-six-page supplemental objection setting out six objections. *Pet'r's Suppl. Obj.* at 1-36. He reinforces his *Rehaif* argument and argues that "*Rehaif* does apply." *Id.* at 5-6. Mr. MacArthur also objects to the Magistrate Judge's prejudice analysis repeating his contentions that the Court should hold an evidentiary hearing and grant a certificate of appealability. *Id.* at 6-27. The main thrust of his argument is that, under *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), the Court's failure to inform Mr. MacArthur of the essential elements of the charge against him at his Rule 11 proceeding was a structural error resulting in prejudice per se. *Id.* at 15-25.

In a recently filed letter, Mr. MacArthur brings to the Court's attention the First Circuit case, *United States v. Lara*, 970 F.3d 68 (1st Cir. 2020). Mr. MacArthur effectively argues that the First Circuit wrongly decided *Lara* and argues that the lack of "fair notice" is structural error. He maintains that the First Circuit "in *Lara* usurped the role of the grand jury by guessing their minds by using evidence never presented to them, and usurped the role of the petit jury to find him guilty of an omitted element, 'and engage[d] in inappropriate judicial factfinding.'" *Id.* at 7

11

(quoting *United States v. Medley*, 972 F.3d 399, 418 (4th Cir. 2020)).

### D.    Government's Opposition

The Government responds in opposition.  First, it repeats its view that Mr. MacArthur has "not demonstrated cause for failing to raise the knowledge-of-status issue in either the District Court or on direct appeal."  *Gov't's Opp'n to Pet'r's Suppl. Obj.* at 1.  The Government then addresses Mr. MacArthur's *Gary* argument. It states that as far as it can tell, "only *Gary* has held that a *Rehaif* error belongs in the class of structural errors," and most courts have employed some type of harmlessness review.  *Id.* at 2.  The Government contends that the Magistrate Judge correctly concluded that Mr. MacArthur "has not shown that, but for the claimed errors, the result of the proceeding would have been different."  *Id.* at 3.  Because Mr. MacArthur has procedurally defaulted and has not shown prejudice, the Government argues that the Recommended Decision should be affirmed.  *Id.*

## IV.    DISCUSSION

### A.    Impact of the ACCA on Sentence

Mr. MacArthur objects to footnote one of the Recommended Decision that reads as follows:

> The First Circuit rejected [Mr. MacArthur's] pro se arguments about the ACCA at least in part because he "was not sentenced pursuant to that statute."  While [Mr. MacArthur] challenges that statement, the First Circuit likely referred to the fact that [Mr. MacArthur's] guideline sentence range was not impacted by his status as an armed career criminal under that statute.  Regardless, the record establishes that his statutory range of imprisonment was set by 18 U.S.C. § 924(e), while the guideline recommendation for a sentence within that statutory range did not rely on his status as an armed career criminal.

*Recommended Decision* at 6 n.1.  He contends that his "guideline sentence range was impacted by his status as an ACCA."  *Pet'r's Obj.* at 9-11.

Mr. MacArthur's argument stems from his persistent confusion about the relationship between the ACCA and the sentencing guidelines.  The Court previously addressed this issue and noted that Mr. MacArthur's confusion is "understandable but not a basis to challenge his sentence."  *Order Denying Def.'s Mots. for Attorney David Beneman to File Claims and for Appointment of Counsel* (ECF No. 98) (*May 3, 2016 Order*).  Mr. MacArthur's confusion is less understandable now because courts have repeatedly explained this issue to him over the years.

### 1.  The Armed Career Criminal Act and the Statutory Penalty

As the Court first explained in its May 3, 2016 order, there is a difference between the statutory penalties applicable to Mr. MacArthur's crime and the guideline calculations used to establish his guideline sentencing range.  *Id.* at 6-9.  To start with the statutory penalties, the indictment charged Mr. MacArthur with being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1).  *Indictment* at 1-3 (ECF No. 4).  Typically, the statutory maximum for a violation of § 922(g)(1) is ten years.  18 U.S.C. § 924(a)(2) (ten year maximum).  But for individuals with a history of violent crime, Congress mandated a much more serious statutory penalty.  Known as the Armed Career Criminal Act (ACCA), the ACCA is applicable to "a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony."  If a person fits within the ACCA, the statutory penalty increases from a maximum of ten years to a minimum of fifteen years and a

maximum of life.  18 U.S.C. § 924(e)(1).  The indictment charged Mr. MacArthur with violating the ACCA, thereby subjecting him to the fifteen to life statutory penalty, and it listed fifteen prior felonies he had committed.  *Indictment* at 1-3.  As the Court noted in its May 3, 2016 order, "Mr. MacArthur's criminal history, the accuracy of which he admitted at his sentencing hearing, contains seven prior convictions for burglary.  *PSR* ¶¶ 32 (one count), 33 (one count), 38 (four counts), 39 (one count)." *May 3, 2016 Order* at 9.  Once again, his current crime, being a felon in possession of a firearm, combined with his prior criminal record, being previously convicted of seven burglaries, made him subject to the ACCA's fifteen year to life statutory penalty.

### 2.    The Guideline Calculation at the Sentencing Hearing

Once again, the Court explains that the sentencing guidelines contain two provisions potentially applicable to Mr. MacArthur's sentence: U.S.S.G. § 4B1.4, Armed Career Criminal provision; and U.S.S.G. § 2K2.1, the firearms possession provision.  The Court sentenced Mr. MacArthur under § 2K2.1, not § 4B1.4.  Section 2K2.1 sets the base offense level for certain firearms offenses, such as Mr. MacArthur's violation of 18 U.S.C. § 922(g)(1), and allows for increases based on specific offense characteristics.  Mr. MacArthur's base offense level of 26 was increased two levels under § 2K2.1(b)(4)(A), as the firearms involved in the offense were stolen, four levels under § 2K2.1(b)(6), as Mr. MacArthur possessed the firearms in the offense in conjunction with another felony offense, and two levels under § 3C1.2, as Mr. MacArthur recklessly created a substantial risk of death or serious

14

bodily injury to another person in the course of fleeing from a law enforcement officer for a total offense level of 34. *Statement of Reasons*, Attach. 1, *Findings Affecting Sentencing* (ECF No. 79). Under § 4B1.4(b), the guidelines provide that a court must apply the greatest enhancement among a number of alternatives, including computations under chapters two and three, which is what occurred in Mr. MacArthur's case. Thus, Mr. MacArthur was sentenced based on a non-ACCA guidelines calculation. As the Court previously stated, "while Mr. MacArthur did qualify as an Armed Career Criminal, the ACCA provisions did not enhance his offense level." *May 3, 2016 Order* at 10. Therefore, the Court concludes that the Magistrate Judge was correct that at sentencing this Court "did not rely on his status as an armed career criminal."

**B.    Modified Categorical Analysis**

Mr. MacArthur objects to the Magistrate Judge's purported use of a "modified categorical approach" in considering sentencing enhancements based on prior offenses. He claims that the modified categorical approach should not be used on an indivisible statute. *Pet'r's Obj.* at 4, 7, 25, 28.

To determine whether a prior conviction is a "violent felony" under the ACCA, a court must compare the elements of the crime of conviction with the elements of the "generic" version of the offense, and only if the elements are the same or narrower than the generic offense does the prior conviction qualify as an ACCA predicate. In *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Supreme Court explained the distinction between the two comparison approaches—the categorical and modified

15

categorical approach. The Supreme Court stated that "[t]o determine whether a prior conviction is for generic burglary (or other listed crime) courts apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. This comparison of elements is "straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." *Id*. at 2249. Sometimes, however, statues have a more complicated "divisible" structure, where the statutes list alternative elements that can support a conviction. *Id*. In those cases, the Supreme Court has "approved the 'modified categorical approach' for use with statutes having multiple alternative elements." *Id*. In undertaking the modified categorical approach, a court is not limited to the elements of the crimes but rather "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id*. (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The court then compares that crime with the relevant generic offense. *Id*.

In *United States v. Duquette*, 778 F.3d 314 (1st Cir. 2015), the First Circuit applied the categorical approach to Maine's burglary statute, 17-A M.R.S. § 401. *Id*. at 317-18. The First Circuit cited *Taylor v. United States*, 495 U.S. 575 (1990) for the proposition that "[t]he ACCA generally requires courts to take a 'categorical approach' by 'look[ing] only to the fact of conviction and the statutory definition of the predicate [i.e., prior] offense' to determine whether a prior offense fits the ACCA's

definition of a violent felony." *Id.* at 318 (citing *Taylor*, 495 U.S. at 602). Thus, applying the categorical approach, the First Circuit held that Maine's burglary statute is "generic," and therefore a "violent felony" under the ACCA. *Id.* As it is required to do, this Court has adhered to the First Circuit's precedent. *See, e.g., United States v. Bowers*, No. 1:16-cr-00151-JAW, 2020 U.S. Dist. LEXIS 152142, at *15-21 (D. Me. Aug. 21, 2020) (concluding that the Maine burglary statute is indivisible and citing cases for support).

Here, the Magistrate Judge plainly and correctly used the categorical approach in determining whether Maine's burglary statute is generic. *See Recommended Decision* at 14-17. The Magistrate Judge focused solely on whether the elements of the Maine burglary statute sufficiently matched the elements of generic burglary, while ignoring the particular facts of the case. The Magistrate Judge explains the standard for the modified categorical approach but does not use the approach in his analysis. *See id.* at 4-5. To the extent the Magistrate Judge looked to Mr. MacArthur's indictment and presentence investigation report, he merely did so in laying out the procedural history of the case and did not use it in his analysis of the Maine burglary statute. *See id.* at 2-6. Despite Mr. MacArthur's repeated insistence to the contrary, the Court concludes the Magistrate Judge properly used a categorical approach and did not err.

### C.    Law of the Case and Law of the Circuit Doctrines

Mr. MacArthur objects to the Magistrate Judge's purported application of the "law of the case" and "law of the circuit" doctrines. *Pet'r's Obj.* at 4, 7-9, 11, 21-24.

He argues the First Circuit never considered a challenge of whether his prior Maine burglary convictions were non-generic. *Id.* at 7-9, 22. He further argues that the Government waived the "law of the case doctrine" argument in its response and even if the Government did not waive the argument, the Magistrate Judge never gave Mr. MacArthur any notice that he was considering a procedural default. *Id.* at 22-24. Finally, Mr. MacArthur argues the Court should depart from the First Circuit's decision in *Duquette* under exceptions to the law of the circuit doctrine. *Id.* at 21. *See MacArthur's Reply to Gov't's Opp'n to His 2255* (ECF No. 143) at 9-14.

Under the law of the case doctrine, "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (quoting *Dirring v. United States*, 370 F.2d 862, 864 (1st Cir. 1967)). In other words, "the doctrine bars a party from resurrecting issues that either were, or could have been, decided on an earlier appeal." *United States v. Matthews*, 643 F.3d 9, 12-13 (1st Cir. 2011). "[T]he aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date." *Id.* This doctrine "is anchored in a sea of salutary policies," such as affording litigants a high degree of certainty as to what claims are still open for adjudication, furthering the interests of finality and repose, promoting efficiency, increasing confidence in the adjudicatory process, and preventing judges from usurping the appellate function and litigants from engaging in judge-shopping. *Ellis v. United States*, 313 F.3d 636, 646-47 (1st Cir. 2002). "These concerns are heightened in the federal habeas context." *Id.* at 647.

The law of the circuit doctrine is a "close cousin" of the law of the case doctrine that "dictates that '[i]n a multi-panel circuit . . . newly constituted panels ordinarily are constrained by prior panel decisions directly (or even closely) on point." *United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2011).   The doctrine "protects horizontal precedent, or precedent from the same court, meaning that generally 'a prior panel decision shall not be disturbed.'" *United States v. Moore-Bush*, 963 F.3d 29, 37 (1st Cir. 2020) (quoting *United States v. Lewko*, 269 F.3d 64, 66 (1st Cir. 2001)). There are two exceptions to this rule—1) "when the holding of the prior panel is contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling)," or 2) in the "rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *San Juan Cable LLC v. P.R. Tel. Co., Inc.*, 612 F.3d 25, 33 (1st Cir. 2010) (internal citations omitted).   However, these exceptions are "extremely narrow" and their incidence is "hen's-teeth-rare." *Id.*

Mr. MacArthur's law of the case objection fails.   In its November 9, 2016 decision, the First Circuit squarely addressed and resolved against Mr. MacArthur the same issue he now attempts to relitigate here: whether his prior burglary convictions were properly counted as crimes of violence under the ACCA. *MacArthur*, 805 F.3d at 387-89.   As just noted, the law of the case doctrine provides that "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255

motion." *Singleton*, 26 F.3d at 240.  Thus, the Magistrate Judge would have been fully justified in applying the law of the case doctrine in denying Mr. MacArthur's argument.

But, the Magistrate Judge did not rely on that doctrine to procedurally default Mr. MacArthur's arguments.   Rather than simply dismissing Mr. MacArthur's arguments, the Magistrate Judge carefully addressed Mr. MacArthur's ACCA arguments, *Recommended Decision* at 14-17, and concluded that "[e]ven if [Mr. MacArthur's] most recent arguments concerning his prior convictions were not precluded, his remaining arguments lack merit." *Recommended Decision* at 15.

Mr. MacArthur's argument under the law of the circuit doctrine also fails. Strictly speaking, the doctrine protects horizontal precedent, not vertical precedent. Because this Court is in a vertical relationship with regards to the First Circuit, with the First Circuit as the appellate court being vertically above this Court in authority, application of the law of the circuit doctrine in improper here.  More importantly, under the doctrine of stare decisis, this Court must adhere to vertical precedent in the First Circuit. *See Gately v. Mass.*, 2 F.3d 1221, 1226 (1st Cir. 1993) ("The doctrine of stare decisis renders the ruling of law in a case binding in future cases before the same court or other courts owing obedience to the decision").  Respect of "both [vertical and horizontal] precedent is essential at all levels in the operation of the federal courts." *Moore-Bush*, 963 F.3d at 37.  While Mr. MacArthur may not like *Duquette*, it is controlling First Circuit law that this Court may not challenge, and thus the Magistrate Judge is correct that the Court "is still bound by [*Duquette*'s]

conclusion." *Recommended Decision* at 15.  *See Dimott v. United States*, 881 F.3d 232, 246 (1st Cir. 2018) (stating that, regarding its application of *Duquette*, "[t]he district court was correct in its ruling given its boundaries," but the First Circuit "is not so constrained") (Torruella, J., dissenting in part); *United States v. Heathcote*, Docket Nos. 2:14-cr-091-NT, 2:16-cv-348-NT, 2019 U.S. Dist. LEXIS 168256, at *9 (D. Me. Sept. 30, 2019) ("It is up to the First Circuit to decide whether it wishes to revisit its conclusion that Maine burglary has all the elements of generic burglary and no more").

### D.    Analysis of the Maine Burglary Statute

Mr. MacArthur objects to the Magistrate Judge's substantive conclusions regarding whether Maine's burglary statute is consistent with generic burglary and therefore qualifies as a violent felony under the ACCA.  *Pet'r's Obj.* at 17-21, 24-29. The Court reviews the Magistrate Judge's determination de novo and concludes that under binding First Circuit precedent, he is correct.

The Maine burglary statute states that a person is guilty of burglary if:

> The person enters or surreptitiously remains in a structure knowing that that person is not licensed or privileged to do so, with the intent to commit a crime therein.  Violation of this paragraph is a Class C crime.

17-A M.R.S. § 401(1)(A).  The statute also has other provisions that enhance the crime to a Class A or B crime under specified circumstances.  17-A M.R.S. § 401(1)(B).

"[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."  *Taylor*, 495 U.S. at 598.

In *Duquette*, the First Circuit found that "[b]y its clear and unambiguous terms, the [Maine burglary statute] contains all of the elements of 'generic burglary' that the Supreme Court set forth in *Taylor*." *Duquette*, 778 F.3d at 318. The First Circuit concluded that "because Maine's burglary statute sets forth the definition of 'generic burglary,' under *Taylor*, a conviction under that statute qualifies as a 'violent felony' under the ACCA." *Id.* This Court recently outlined the legal landscape of Maine's burglary statute as a valid predicate offense under the ACCA. *See Bowers*, 2020 U.S. Dist. LEXIS 152142, at *8-13.

Mr. MacArthur argues that because under *State v. Cook*, 2010 ME 85, 2 A.3d 333 a defendant need only be under the structure, the Maine burglary statute is broader than generic burglary. *Pet'r's Obj.* at 26. However, the Magistrate Judge correctly noted that the defendant in *Cook* had to cut the lattice at the outer boundary of the structure's foundation to gain access to the underside of the structure and cut the copper pipe. *See Cook*, 2010 ME 85, ¶ 14. The *Cook* Court found that the area underneath the structure was part of the structure because it was "closed or secured against the weather by skirting or lattice . . .." *Id.* As this Court previously concluded, "[t]here is no precedent from the Supreme Court or First Circuit to support a conclusion that this interpretation of structure is broader than the general definition, and the fact that the Law Court decided *Cook* years before the First Circuit's decisions in *Dimott* and *Duquette* suggests it is not." *Bowers*, 2020 U.S. Dist. LEXIS 152142, at *15-16.

Mr. MacArthur takes issue with *Duquette*, arguing that "[t]he *Duquette* court never [analyzed] anything beyond 17-A M.R.S.A. § 401(1)(A)" and that defendant was only convicted of Class C burglaries, and contending further that the provisions of § 401(1)(B) are non-generic.   *Pet'r's Obj.* at 20.   However, for a § 401(1)(B) enhancement to apply, a defendant must first have violated § 401(1)(A), which the First Circuit in *Duquette* found to be generic.   *See Bowers*, 2020 U.S. Dist. LEXIS 152142, at *17-19.

Mr. MacArthur makes additional arguments.   He contends that the Maine burglary statute is broader than generic burglary because § 401(1)(B)(2) includes attempted burglary and because attempted burglary is non-generic, the Maine burglary statute is non-generic.   He also points to the definition of "structure" in the Maine criminal code and argues that "a building or other place designed to provide protection for persons or property against weather or intrusion" is too broad to be generic.   *See* 17 M.R.S. § 2(24).   Another judge in this district recently considered similar challenges and concluded that the district court is bound by *Duquette*.   *See Heathcote*, 2019 U.S. Dist. LEXIS 168526, at *8-9.

## E.   Evidentiary Hearing

Mr. MacArthur objects to the Magistrate Judge's recommendation that the Court deny Mr. MacArthur's request for an evidentiary hearing and grant the Government's request to dismiss his motion because "[s]ummary dismissal of a motion is only when the factual allegations are 'vague, conclusory, or palpably incredible,' even 'if the record does not conclusively and expressly belie [the] claim.'"

23

*Pet'r's Obj.* at 5, 29-30 (quoting *David v. United States*, 134 F.3d 470, 478 (1st Cir. 1998)).

Pursuant to 28 U.S.C. § 2255(b), a district court "shall . . . grant a prompt [evidentiary] hearing" "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *DeCologero v. United States*, 802 F.3d 155, 167 (1st Cir. 2015). "A prisoner who invokes section 2255 is not entitled to an evidentiary hearing as a matter of right." *David*, 134 F.3d at 477. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003). "[T]he petitioner bears the burden of establishing the need for an evidentiary hearing." *DeCologero*, 802 F.3d at 167 (quoting *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)).

The Court agrees with the Magistrate Judge that no evidentiary hearing is required here. Mr. MacArthur's arguments are all legal arguments—he does not contest any facts that would warrant a hearing. Mr. MacArthur claims there are "many facts that can be hashed out at an evidentiary hearing," but none of the examples he lists requires an evidentiary hearing. *See Pet'r's Obj.* at 29-30. The Court has reviewed the Magistrate Judge's decision de novo and has determined that

Mr. MacArthur's petition is inadequate on its face.  The Court agrees that an evidentiary hearing is not warranted here.

### F.    Certificate of Appealability

Mr. MacArthur objects to the Magistrate Judge's recommendation that the Court deny a certificate of appealability (COA).  *Pet'r's Obj.* at 31-34.  He argues that a "reasonable jurist could find that the [Magistrate Judge's] resolution of [Mr. MacArthur's] Section 2255 motion was [debatable] or wrong, and that the Constitutional claims are worthy of encouragement to proceed further."  *Id.* at 33-34.

Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Under 28 U.S.C. 2253(c)(2), the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  The Court agrees with the Magistrate Judge's recommendation because Mr. MacArthur has not made a substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### G.    *Rehaif* Claim

In his Supplemental Objection, Mr. MacArthur argues that "in light of *Rehaif* [he] never received real notice of the true nature of his charge in violation of due process of law rendering his guilty plea involuntary and unintelligent."  *Pet'r's Suppl. Obj.* at 3-4.  In other words, he contends "neither the Court or counsel properly 'noticed' [him] as to the essential elements to his § 922(g)(1) offense" when he pleaded guilty.  *Id.* at 4.

### 1. *Rehaif*

Under 18 U.S.C. § 922(g)(1), it is unlawful for any person who has been convicted of a felony "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The statute includes four elements: 1) a status element, 2) a possession element, 3) a jurisdictional element, and 4) a firearm element. *Rehaif v. United States*, 139 S. Ct. 2191, 2195-96 (2019). A separate provision, 18 U.S.C. § 924(a)(2), adds that whoever "knowingly" violates § 922(g) shall be fined or imprisoned for up to ten years. *Id.* at 2194. In *Rehaif*, the Supreme Court held that the word "knowingly" applies to both the defendant's conduct and to the defendant's status. *Id.* To obtain a conviction under § 922(g), "the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.*

### 2. The Magistrate Judge's *Rehaif* Ruling

The Magistrate Judge found that Mr. MacArthur's *Rehaif* claim was not *Teague*-barred nor procedurally defaulted for failure to raise the issue on appeal. *See Am. Suppl. Recommended Decision* at 20-22. However, the Magistrate Judge concluded that because "the record establishes that the Government would have been able to prove beyond a reasonable doubt that [Mr. MacArthur] knew of his prohibited status at the time he possessed the firearm," Mr. MacArthur was not prejudiced as a

result of any *Rehaif*-related error and therefore he is not entitled to postconviction relief. *Id.* at 22-23.

### 3. The *Rehaif* Analysis

The Court concludes that Mr. MacArthur was not informed that the Government would need to prove that he knew he was a convicted felon at the time he possessed the firearm. At his Rule 11 hearing, Mr. MacArthur was merely instructed that Count 1 of the indictment alleged "you knowingly possessed a firearm or firearms that had previously traveled in interstate or foreign commerce . . .. It alleges that you had previously been convicted of a crime punishable by imprisonment for more than one year, and it sets forth 15 separate felonies that it alleges that you have been convicted of." *Tr. of Proceedings* at 6:10-20 (ECF No. 87) (*Rule 11 Tr.*). He was never informed that the indictment alleged he knew he was a felon at the time of possession. At the hearing he admitted to the contents of the prosecution version, which states that he had been previously convicted of at least two felonies, but there is no mention of the "knowing" element. *Rule 11 Tr.* at 11:17-13:11; *see Gov't's Version of the Offense* at 3 (ECF No. 34) (*Prosecution Version*). The Court also agrees with Mr. MacArthur that the "knowing" requirement applies to 18 U.S.C. § 924(e), not merely § 924(a). *See United States v. Lara*, 970 F.3d 68, 86 (1st Cir. 2020).

### 4. *Burghardt* and *Lara*

The Court, however, agrees with the Magistrate Judge that Mr. MacArthur was not prejudiced. The critical First Circuit cases are *United States v. Burghardt*, 939 F.3d 397 (1st Cir. 2019) and *United States v. Lara*, 970 F.3d 68 (1st Cir. 2020).

In *Burghardt*, the First Circuit started with the premise that because the defendant did not offer his Rule 11 objection on direct review, his argument should be reviewed for plain error. *Id.* at 402-403. Later, in *Lara*, the First Circuit affirmed the use of the plain error standard "even to challenges to structural errors if they were not raised below." *Lara*, 970 F.3d at 86. Under this standard, the defendant must show "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . ., and which (4) seriously impugns the fairness, integrity or public reputation of the proceeding." *Burghardt*, 939 F.3d at 403; *Lara*, 970 F.3d at 86-87.

In *Burghardt*, the First Circuit stated that the defendant's "mere assertion, by itself, that he would likely have acted differently but for the Rule 11 error is insufficient to establish the requisite reasonable probability of a different result if the circumstances surrounding the plea render such a change in his behavior improbable." *Id.* The *Burghardt* Court ultimately concluded that the defendant failed to show reasonable probability that he would not have pleaded guilty because he did not dispute that he pleaded guilty to prior felony offenses, the state court judges were required by law to inform the defendant that the offenses were felonies, and his presentence investigation report (PSR) showed his felony convictions. *Id.* at 404-06.

The *Lara* case went to trial and the First Circuit therefore first reviewed the indictment to determine whether the grand jury would have indicted the defendant despite the "omitted element." *Lara*, 970 F.3d at 87. The *Lara* Court noted that the grand jury identified four crimes punishable by a term exceeding one year, and in

light of "at least the four relatively recent and serious Maine convictions, as well as the judgment and commitment order for them," *id.*, the First Circuit concluded that the grand jury "[s]urely" "would have also found" the omitted element. *Id.* (quoting *United States v. Cotton*, 535 U.S. 625, 633 (2002)).

Next, the First Circuit reviewed the evidence that the government presented at trial. *Id.* at 88-90. Noting that the government's failure to address the knowledge requirement was not "a problem of its own making," the First Circuit recited caselaw holding that to satisfy the "miscarriage of justice" standard under plain error, a court should avoid a "wasteful reversal," writing that a "wasteful reversal takes place if, after a trial judge failed, without objection, to submit an element of the offense to the jury, an appellate court vacated the conviction for that offense in spite of 'overwhelming' and 'essentially uncontroverted' evidence that the element was satisfied." *Id.* at 89 (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)). The First Circuit concluded that overturning the conviction in that case would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 90 (quoting *United States v. Johnson*, 963 F.3d 847, 852-54 (9th Cir. 2020)).

### 5.   The Indictment, the Guilty Plea and the Sentencing

The May 17, 2012 grand jury indictment in Mr. MacArthur's case lists fifteen prior felony convictions. *Indictment* at 1-3 (ECF No. 4). Based on the docket numbers, the fifteen prior felonies took place in years 2004 and 2005. *Id.* In *Lara*, the First Circuit concluded that faced with evidence of four relatively recent and serious Maine convictions, there was no basis to conclude that the grand jury in that

29

case would not have found the omitted element. As with *Lara*, there is no reason to conclude that the grand jury in Mr. MacArthur's case would not have similarly found the omitted element of at least one prior felony.

Turning to the guilty plea, as noted earlier, the Government produced a government's version of the offense, which expressly listed two prior felony convictions, and at the Rule 11, Mr. MacArthur admitted that the government's version of the offense was true and accurate.

To the extent that there is any remaining question, the PO prepared a PSR that listed details of Mr. MacArthur's extensive felonious criminal history in twenty-three paragraphs. *PSR ¶¶ 23-44A*. Among his convictions, noteworthy are his February 17, 2005 convictions for burglary (five counts), theft (four counts), and felony aggravated forgery for which he was sentenced to a maximum of seven years of concurrent incarceration. *PSR ¶¶ 38-40*. But even more germane is that on February 17, 2005, he was sentenced to five concurrent years of imprisonment for two state charges of being a felon in possession of a firearm. *Id. ¶¶ 38-39*.

Mr. MacArthur has not shown a reasonable probability that he would not have pleaded guilty had he known the Government was required to prove he knew he was a felon. The indictment he pleaded guilty to lists fifteen felonies that he had been previously convicted of, and the Government's Version of the Offense, which he expressly admitted at the Rule 11 hearing was accurate, lists two felonies he had been previously convicted of. *Gov't Version of the Offense* at 3 (ECF No. 34) ("Prior to January 20, 2012, the defendant had previously been convicted of a crime or crimes

punishable by imprisonment for a term of more than one year.  Those crimes include:

1. Burglary, a Class B felony (State of Maine Superior Court, Penobscot County, Docket Number BANSC-CR-2004-00227); 2. Aggravated Forgery, a Class B felony (State of Maine Superior Court, Penobscot County, Docket Number BANSC-CR-2005-24)").  At his Rule 11 hearing on November 26, 2012, the Court specifically asked Mr. MacArthur whether he had read the prosecution version in this case, reminded him that it was a "very important document," and confirmed that he had reviewed the prosecution version carefully.  *Tr. of Proceedings*, *Rule 11 Proceedings*, at 12:5-13:2 (ECF No. 87).  The Court directly asked Mr. MacArthur:

> THE COURT: Now, again, I'm going to ask you a very important question, and, again, I want a - - and require a truthful and honest answer.  Do you disagree with anything in the government's version of the offense?
>
> THE DEFENDANT: No.
>
> THE COURT: Is the information set forth in the government's version of the offense true to your own personal knowledge?
>
> THE DEFENDANT: Yes.

*Id.* at 13:3-11.

Moreover, at his March 12, 2014 sentencing hearing, Mr. MacArthur admitted that, knowing that the contents of the PSR could affect his sentence, the contents of the PSR were accurate:

> THE COURT: Mr. MacArthur, have you read the [presentence] report in its entirety?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Have you had enough time to discuss the contents with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Now, the guideline calculations have been altered. They actually remain the same ultimately, but they've been altered today, so - - and I'm not really asking you about those matters. Those things are for your lawyer.
But you do understand that, as I told you quite a little while ago, that there are matters in the report that reflect your criminal history, your background, where you were born and brought up, your schooling, your education, your work history, things of that sort, have you had an opportunity to review your background?

THE DEFENDANT: Yes, sir.

THE COURT: It also describes in some detail the nature of the offense - - offenses here. Have you had an opportunity to review the description of the offenses?

THE DEFENDANT: Yes, sir.

THE COURT: Now, you realize, Mr. MacArthur, that I am going to rely on the contents of the report in determining your sentence. You understand that.

THE DEFENDANT: Yes, sir.

THE COURT: Knowing that the content of the report may affect your sentence, is there anything in the report you believe is inaccurate?

THE DEFENDANT: No, sir.

THE COURT: Thank you. You may be seated.

*Tr. of Proceedings, Sentencing Proceedings*, at 7:15-8:19 (ECF No. 86). Based on this colloquy, the Court concludes (and Mr. MacArthur does not claim otherwise) that the criminal history in the PSR is accurate and that at the time he possessed the firearms in this case, Mr. MacArthur was many times over a felon, including two prior felon

in possession of firearms convictions, and was prohibited from possessing a firearm before January 20, 2012, when he possessed a Colt Model SPI .223 caliber rifle and an American Arms Model AKY39 7.62x39 millimeter rifle. *PSR* ¶ 6. The evidence would include his having been sentenced to seven years in state prison on February 17, 2005, including the two felon in possession convictions for which he served concurrent five year state sentences. *PSR* ¶¶ 38-39.

With this admitted history, Mr. MacArthur would have to explain how it could possibly be that having previously served extended periods in jail for multiple offenses, including firearms possession, he did not know before January 20, 2012, that he was not allowed to possess a firearm. As the Fifth Circuit put it succinctly in *United States v. Lavalais*, "[c]onvicted felons typically know they're convicted felons." 960 F.3d 180, 184 (5th Cir. 2020). Nevertheless, Mr. MacArthur claims that had he known of the "knowing" element, he might have argued he had "amnesia" or "maybe a brain [aneurism]," *Pet'r's Suppl. Obj.* at 24, but the Court finds these arguments implausible. In addition to his criminal history, Mr. MacArthur's PSR also sets forth his mental and emotional health history. *PSR* ¶ 63. Although Mr. MacArthur has some mental health concerns, there is no reference to anything like the type of profound amnesia he is now asserting. Similarly, the PSR contains a paragraph on his physical condition, and although the PSR mentions a head injury Mr. MacArthur sustained when he was eighteen, there is no mention of the possibility of an aneurism in the brain. *PSR* ¶ 62

In the Court's view, Mr. MacArthur's contentions fall far short of his obligation to "show a reasonable probability that, but for the purported error, he would not have pled guilty." *Burghardt*, 939 F.3d at 403 (quoting *United States v. Díaz-Concepción*, 860 F.3d 32, 38 (1st Cir. 2017); *United States v. Urbina-Robles*, 817 F.3d 838, 342 (1st Cir. 2016)). Moreover, Mr. MacArthur's "mere assertion, by itself, that he would likely have acted differently but for the Rule 11 error is insufficient to establish the requisite reasonable probability of a different result if the circumstances surrounding the plea render such a change in his behavior improbable." *Id.* Furthermore, like *Burghardt*, where the First Circuit pointed out that the defendant had served multiple multi-year sentences of imprisonment, Mr. MacArthur would face the argument that "the receipt of such sentences would certainly have made clear to [Mr. MacArthur] the fact that his offenses were punishable by more than one year." *Id.* at 404. Finally, Mr. MacArthur has not presented the Court with any records from his state proceedings, such as his guilty pleas and sentencing hearings, so that if there is something exculpatory in those records, he has not made the Court aware of it. The *Burghardt* Court concluded in an analogous situation that the absence of such records "cuts against" a defendant. *Id.* at 405.

### 6.    *United States v. Gary*

While Mr. MacArthur hypothesizes about different arguments he might have made, the meat of his contention is that the failure to inform him of the "knowing" element at his Rule 11 Hearing was a "structural error" that requires automatic

reversal of his conviction. *Pet'r's Suppl. Obj.* at 11-25. In support, he relies on *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020).

In *Gary*, the Fourth Circuit found on direct appeal that the defendant "did not knowingly and intelligently plead guilty because he was not fully informed during his plea colloquy of the elements the government had to prove to convict him of the § 922(g) offenses" and held that "this type of error—this denial of due process—is a structural error that requires the vacatur of [defendant's] guilty plea and convictions." *Gary*, 954 F.3d at 201. The *Gary* Court concluded the error was "structural" because it violated the defendant's "right to make an informed choice on whether to plead guilty" and because the deprivation of his autonomy interest under the Fifth Amendment due process clause "has consequences that 'are necessarily unquantifiable and indeterminate,' rendering the impact of the district court's error simply too difficult to measure." *Id.* at 206 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006)). The *Gary* Court further found the error was structural because "fundamental unfairness results when a defendant is convicted of a crime based on a constitutionally invalid guilty plea." *Id.* "Regardless of evidence in the record that would tend to prove that [defendant] knew of his status as a convicted felon, it is in the interest of justice that [defendant] knowingly and intelligently 'engag[e] in the calculus necessary to enter a plea on which this Court can rely in confidence.'" *Id.* at 207 (quoting *United States v. Lockhart*, 947 F.3d 187, 197 (4th Cir. 2020)).

The law has not stood still.  The Fourth Circuit itself may be having second thoughts.  After the Fourth Circuit panel decided *Gary*, the Government moved for a rehearing en banc, which was denied, but in the denial, Judge Wilkinson joined by four circuit judges filed a concurrence, explaining that he concurred "for one reason and one reason only.  The panel's holding is so incorrect and on an issue of such importance that I think the Supreme Court should consider it promptly.  Any en banc proceedings would be only a detour."  *United States v. Gary*, 963 F.3d 420, 420 (4th Cir. 2020).  Since this denial, however, the Fourth Circuit may have decided to take the detour.

In his filings, Mr. MacArthur cites a Fourth Circuit case, *United States v. Medley*, 972 F.3d 399, 418 (4th Cir. 2020).  In *Medley*, issued on August 21, 2020, the Fourth Circuit applied *Gary* to a guilty verdict after a jury trial, not a guilty plea.  *Id.* at 402-03.  Judge Quattlebaum issued a strong dissent, setting forth the rationale for affirming the conviction that other courts, including the First Circuit, have articulated.  *Id.* at 419-41.  On November 22, 2020, a majority of the judges in the Fourth Circuit in regular active service and not disqualified voted to grant a petition for rehearing en banc.  *Id.*, 2020 U.S. App. LEXIS 35628 (4th Cir. Nov. 12, 2020).  The Fourth Circuit tentatively calendared the case for oral argument during its January 26-29, 2021 oral argument session.  *Id.*

Meanwhile, as Judge Wilkinson predicted, efforts have been made to obtain United States Supreme Court review of this issue.  The Fourth Circuit panel decided *Gary* on March 25, 2020, 954 F.3d 194, and after the Fourth Circuit denied rehearing

en banc on July 7, 2020, 963 F.3d 420, the government filed a petition for writ of certiorari with the United States Supreme Court on October 5, 2020. No. 20-444 (Oct. 5, 2020). The Fifth Circuit decided *Lavalais*, 960 F.3d 180, on May 22, 2020 and Mr. Lavalais petitioned for a writ of certiorari with the United States Supreme Court on August 20, 2020. No. 20-5489 (Aug. 20, 2020). The Supreme Court necessarily deals with petitions for writ of certiorari in its own way and in its own time. However, in light of the Fourth Circuit's decision to hold an en banc rehearing in *Medley* and the increasingly outlier status of *Gary*, the Supreme Court could well allow the Fourth Circuit to reconsider its *Gary* rule, rather than doing for the Fourth Circuit what the Fourth Circuit can do for itself.

Other courts have declined to follow the *Gary* court's approach. *See United States v. Lavalais*, 960 F.3d 180, 187-88 (5th Cir. 2020) (disagreeing with the *Gary* court and noting "the Fourth Circuit gets the analysis exactly backwards" because "[i]f the effects of *Rehaif* error are too hard to measure, it's because it's almost always harmless—because convicted felons typically know they're convicted felons"); *United States v. Coleman*, 961 F.3d 1024, 1029, 1029 n.3 (8th Cir. 2020) (stating that "[n]either the Supreme Court nor this court has ever identified a constitutionally invalid guilty plea as structural error" and noting a circuit split—"[t]he circuit courts that have considered the issue are split, with the Fifth, Sixth, and Tenth Circuits holding that a constitutionally invalid plea is not structural error, while the Fourth Circuit holds otherwise") (internal citations omitted); *United States v. Maez*, 960 F.3d 949 (7th Cir. 2020) (finding that an indictment that failed to allege defendants knew

they had the relevant status when they possessed guns was not a structural error); *United States v. Johnson*, No. 17-10252, 2020 U.S. App. LEXIS 33706, at *15-16 (9th Cir. Oct. 26, 2020) (concluding that "uncontroverted evidence that a defendant was sentenced to more than one year in prison" will ordinarily preclude a defendant from satisfying plain error review when challenging the district court's failure to require the government to prove that the defendant knew of his status as a convicted felon); *United States v. Windley*, Civil Action No. 14-cr-10197-PBS, 2020 U.S. Dist. LEXIS 142584, at *8-9 (D. Mass. Aug. 10, 2020) (noting that while the Fourth Circuit has held a *Rehaif* error to be structural, "[t]he remaining circuits, including the First Circuit, have instead asked on direct review whether the error affected the defendant's substantial rights").

Furthermore, although some circuit courts have not squarely addressed the issue of structural error, these circuits resolved similar arguments under the prejudice prong of the plain-error test, a test that would be very difficult for Mr. MacArthur with his fifteen prior felonies to meet. *Johnson*, 2020 U.S. App. LEXIS 33706, at *15-16; *United States v. Hobbs*, 953 F.3d 853, 856-58 (6th Cir. 2020); *United States v. McLellan*, 958 F.3d 1110, 1120 (11th Cir. 2020); *United States v. Williams*, 946 F.3d 968, 973-74 (7th Cir. 2020).

The Court declines to follow *Gary* and agrees with every other circuit that post-*Rehaif* challenges in the guilty plea context are not structural errors requiring automatic reversal or that have imposed the substantial hurdle of the prejudice prong

of the plain-error test.[2]   As other district courts in the First Circuit recently concluded, *Lara* and *Burghardt* are binding precedent.[3]   *See Grey v. United States¸* Case No. 20-cv-474-PB, 2020 U.S. Dist. LEXIS 184052, at *3-4 (D.N.H. Oct. 5, 2020) (rejecting a § 2255 petitioner's claim because the petitioner "failed to square the Fourth Circuit's [*Gary*] decision with *Burghardt*, which is binding precedent on this court" and failed to "engage[] with the better reasoned decisions from the Fifth, Sixth, Seventh, Eighth, and Tenth Circuits which rejected" the contention that a *Rehaif* error is structural); *see also Windley*, 2020 U.S. Dist. LEXIS 142584, at *8-9 (rejecting *Gary*).   *Gary*—a Fourth Circuit case with no adherence outside that circuit—is not binding.

Because Mr. MacArthur has not carried his burden of showing that it is reasonably probable that he would not have pleaded guilty had the Court told him that the Government was required to prove beyond a reasonable doubt that he knew when he possessed the gun that he had previously been convicted of a felony, the Court affirms the Magistrate Judge's conclusion on Mr. MacArthur's *Rehaif* claim. *See Burghardt*, 939 F.3d at 405-06.   Furthermore, notwithstanding any conclusion as

---

[2]   Just two days ago, the Third Circuit issued *United States v. Nasir*, No. 18-2888, 2020 WL 7041357, 2020 U.S. App. LEXIS 37489 (3d Cir. Dec. 1, 2020), a sharply divided en banc opinion in which a bare majority vacated a guilty verdict in a felon in possession case where the defendant had at least three prior felony convictions, including a prior conviction for possession of a firearm by a convicted felon.   *Id.*, 2020 U.S. App. LEXIS 37489, at *2, 86.   Applying the four-step plain error analysis, the majority opinion concluded that the government failed to prove an element of the felon in possession offense, namely that the defendant knew he was a felon when he possessed the firearm in the federal case. *Id.* at *54-56.   Nine judges of the sixteen judge en banc panel were in the majority with one judge joining the majority and concurring.   *Id.* at *62-84.   Seven judges dissented, describing the majority view as "profoundly mistaken." *Id.* at *85, 85-111.   The *Nasir* decision does not affect this Court's analysis because it is out of circuit and because it is contrary to *Burghardt* and *Lara*.

[3]   As noted earlier, Mr. MacArthur is highly critical of the First Circuit's decision in *Lara*. *See Pet'r's Suppl. Obj.* at 7.   Although Mr. MacArthur is free to argue against the decisions of the Court of Appeals for the First Circuit, this Court owes allegiance to the First Circuit and must apply its rulings.

to structural error, the Court concludes that under the circumstances, Mr. MacArthur

has not shown that the *Rehaif* error "seriously impugns the fairness, integrity or

public reputation of the proceeding."  *See Lara*, 970 F.3d at 86-90 (concluding that

failure to allege in the indictment or introduce evidence at trial that defendant knew

he was a felon was not plain error and "it would be the overturning, and not the

affirming, of the conviction on the basis of the newly raised challenge under *Rehaif*

that would 'seriously affect the fairness, integrity, or public reputation of judicial

proceedings'").

### H.    Remaining Arguments

Mr. MacArthur's remaining arguments either lack merit or reiterate

arguments that the Court and the Magistrate Judge previously rejected either in this

or prior orders.  *See Recommended Decision*; *Am. Suppl. Recommended Decision*; *May

3, 2016 Order.*

## V.    CONCLUSION

The Court has reviewed and considered the Magistrate Judge's Recommended

Decision, together with the entire record.  The Court has made a de novo

determination of all matters adjudicated by the Magistrate Judge's Recommended

Decision and Amended Supplemental Recommended Decision.  The Court concurs

with the recommendations of the United States Magistrate Judge for the reasons set

forth in his Recommended Decision and Amended Supplemental Recommended

Decision, and determines that no further proceeding is necessary.

1.  It is therefore <u>ORDERED</u> that the Recommended Decision and Amended
    Supplemental Recommended Decision of the Magistrate Judge be and

hereby are <u>AFFIRMED</u> (ECF No. 146, 166).

2.  It is further <u>ORDERED</u> that the Petitioner's 28 U.S.C. § 2255 Petition be and hereby is <u>DENIED</u> (ECF No. 112).

3.  It is further <u>ORDERED</u> that no certificate of appealability should issue in the event the Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of December, 2020